[Docket No. 7]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| ANDREW HILL *on behalf of* THE ESTATES OF ANDREW HILL and JANET HILL,<br><br>        Plaintiff,<br><br>v.<br><br>THE CHEMOURS COMPANY,<br><br>        Defendant. | Civil Action No. 24-7172<br>(RMB/SAK)<br><br>**OPINION** |

**APPEARANCES**

Andrew W. Hill
20 N. Golfwood Avenue
Carney's Point, New Jersey 08069

    *Pro Se Plaintiff as legal representative of the Estates of Andrew Hill and Janet Hill*

David Andrew Schlier, Esq.
MCCARTER & ENGLISH, LLP
405 N. King Street, Suite 8th Floor
Wilmington, Delaware 19801

Ryan A. Richman, Esq.
Lanny Steven Kurzweil, Esq.
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

    *Counsel to Defendant The Chemours Company*

**RENÉE MARIE BUMB, Chief United States District Judge:**

This is a wrongful death suit brought by *pro se* Plaintiff Andrew W. Hill ("Plaintiff") as legal representative and on behalf of the Estates of Andrew Hill and Janet Hill, his parents (together, the "Hills") against Defendant The Chemours Company ("Chemours" or the "Defendant"). Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint (the "Motion") [Docket No. 7], pursuant to Federal Rule of Civil Procedure 12(b)(6). Having considered the parties' submissions, the Court resolves the Motion without oral argument. FED. R. CIV. P. 78(b); L. CIV. R. 78.1(b). For the reasons expressed herein, the Motion will be **GRANTED** and the Complaint will be **DISMISSED WITHOUT PREJUDICE**. Nonetheless, Plaintiff will be permitted to amend his pleadings to cure the deficiencies identified herein.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Andrew W. Hill brings this action against Chemours on behalf of the estates of his deceased parents, Andrew and Janet Hill, alleging that Chemours intentionally contaminated the local water supply with harmful "forever chemicals," which led to the deterioration of his parents' health, multiple medical ailments, and ultimately their deaths in 2022 and 2023, respectively. [Compl. at 1, 3.]

Plaintiff avers that, beginning in the 1970s, DuPont[1] has knowingly pumped "chemical pollutants" from the Chambers Works plant in Deepwater, New Jersey into a local river that made its way to the open ocean. [*Id.* at 3.] After protests about this conduct, DuPont made modifications to its waste management process that involved a moat that "acted as a retainment pond / entry point into the subterranean water." [*Id.*] Plaintiff alleges that this did not solve the problem and the chemical waste "polluted the water supply from the entry point of the moat all the way to Pendricktown, NJ." [*Id.*] The "levels" of chemical pollutants in the water in this area were many times greater than the legal limits. [*Id.*] Yet, Plaintiff alleges, DuPont never shared the "medical precursors" that indicated adverse health effects caused by exposure to water polluted with its "forever chemicals," such as hypertension and extremely high cholesterol, with the local community. [*Id.*] Plaintiff claims that "DuPont and later Chemours covered and hid facts and fought against any information becoming public" about the health effects of forever chemicals and that the local water supply was being contaminated as a result of how DuPont disposed of its chemical waste. [*Id.* at 5.] Now, however, the "full threat of the forever chemicals" is well-documented. [*Id.* at 3.]

---

[1] Defendants state that DuPont is "a third-party former owner of Chambers Works." [Def.'s Br. at 2.] Chemours was created by DuPont following a spin-off of its Performance Chemicals segment. *See* The Chemours Company, LLC, General Form for Registration of Securities (SEC Form 10) (Dec. 18, 2014). The Court may take judicial notice of public disclosure documents filed with the Securities and Exchange Commission. *Dang v. Amarin Corp. plc*, No. CV 21-19212 (RK) (TJB), 2024 WL 4285900, at *12 (D.N.J. Sept. 25, 2024) (quoting *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000)).

The Hills lived in their home in Carney's Point, New Jersey from 1979 until their deaths. Their home was within the "*hot zone*" of contamination, as described by Plaintiff. [*Id.*] The Hills drank and used the allegedly contaminated well water from their home for over forty years. [*Id.*] According to Plaintiff, DuPont eventually tested the Hill's water supply and found that the levels of forever chemicals present were 800% above the legal limits. [*Id.* at 5.] The well that supplied the Hills' water was "among the highest polluted wells in the *hot zone*." [*Id.*]

Plaintiff alleges that the Hills' prolonged exposure to forever chemicals in their well water caused the Hills to develop myriad health problems starting at unusually young ages, from which they eventually succumbed.[2] [*Id.*]

Based on these facts, Plaintiff filed this action in the Superior Court of New Jersey, Civil Division, Salem County on May 14, 2024, seeking compensation for the injuries and eventual deaths of the Hills. On June 21, 2024, Chemours removed the action to federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332, 1441. [Notice of Removal ¶¶ 4–20, Docket No. 1.] Defendant filed

---

[2] The Court need not recite the full list of medical ailments from which the Hills allegedly suffered. Suffice it to say, they include cancerous growths, hemorrhaging, Parkinson's disease, high cholesterol, strokes, and dementia. [Compl. at 3–5.]

the instant Motion on July 12, 2024.[3]  As the Motion is now fully briefed, it is ripe for adjudication.

## II. LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).  It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).  Further, "to determine the sufficiency of a complaint," the Court must follow a three-step process:

---

[3] Chemours has filed a memorandum of law in support of its Motion ("Def.'s Br."). [Docket No. 7-1.]  Plaintiff submitted a brief in opposition to the Motion (the "Opposition" or "Pl.'s Opp'n"). [Docket No. 8.]  And Chemours filed a reply brief ("Def.'s Reply"). [Docket No. 9.]  Chemours claims Plaintiff's Opposition was filed two days past the Court's deadline. [Def.'s Reply at 1 n.1.]  The Opposition was received by the Clerk of the Court by mail on July 24, 2024, which is reflected in the "RECEIVED" stamp on the document's first page.  It should go without saying then that the *pro se* Plaintiff, who is not able to file papers instantly via ECF, mailed his papers in advance of that date.  The Court deems the Opposition timely submitted.

5

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009) (alterations in original)). A district court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'"). Thus, "[a] motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570).

*Pro se* complaints are to be "liberally construed" and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted). Although *pro se* pleadings are to be liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim," *Owens v. Armstrong*,

6

171 F.Supp.3d 316, 328 (D.N.J. 2016) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)), and are not exempt from complying with federal pleading standards. *See Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

### III. DISCUSSION

#### A. The Complaint Fails to State a Claim upon which Relief can be Granted

According to Chemours, Plaintiff's Complaint must be dismissed because (1) it does not sufficiently set forth the "causation agents" involved, *i.e.*, the particular chemicals alleged to have harmed the Hills; (2) it does not adequately allege a causal link between "forever chemicals" and the Hills' injuries; (3) it fails to allege facts that establish actual exposure to any toxins; and (4) it does not establish any causal link between the actions of Chemours and the alleged injuries. These arguments are essentially all attacks on the Complaint's ability to plead causation, as required to establish Plaintiff's claims.[4]

#### 1. Causation Agent

The Complaint alleges that "chemical pollutants" and "forever chemicals" were found at greatly elevated levels in the Hills' water supply and, as a result, caused their

---

[4] The New Jersey Wrongful Death Act provides a cause of action "[w]hen the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensured, have entitled the person injured to maintain an action for damages." N.J. STAT. ANN. 2A:31-1. Negligence, in turn, requires a showing of duty, breach of that duty, causation, and damages. *Dorsey v. Burns*, No. CV 22-431 (RMB-EAP), 2024 WL 4751246, at *3 (D.N.J. Nov. 12, 2024) (citing *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 410 (3d Cir. 2021)).

7

injuries and eventual deaths. [Compl. at 3, 5.]  Plaintiff provides no additional details as to the specific chemicals in question.  Defendant takes issue with this because, "[w]ithout knowing which substance is alleged to be the causation agent, there is no means of determining whether a claim has been stated against a particular Defendant." [Def.'s Br. at 4 (quoting *Bellafaire v. Town of Wheatfield*, 401 F. Supp. 3d 405, 414 (W.D.N.Y. 2019).]

Defendant relies heavily on *Bond v. Solvay Specialty Polymers, USA*, LLC, 583 F. Supp. 3d 643, 651 (D.N.J. 2022) to support its position.  *Bond* is one of several related cases pending in this District that involves individuals – much like Plaintiff – who brought claims against Chemours, DuPont, and others, alleging that their prolonged exposure to toxic waste emanating from certain plants, including the Chambers Works facility, resulted in severe medical ailments. *Id.* at 646–47.  In *Bond*, the court found that the plaintiffs had sufficiently alleged toxic tort liability from "the disposal of chemicals such as poly- and perfluoroalkyl substances ('PFAS'), particularly perflouoronaonanoic acid ('PFNA') and perfluorooctanoic acid ('PFOA')." *Id.* at 646, 652–53.  The *Bond* court, however, found that the plaintiffs'

claims premised on exposure to "other toxins" were insufficient to adequately state a plausible claim. *Id.* at 653.[5]

The allegations here are not nearly as vague as the catch-all "other toxins" addressed in *Bond*. Chemours claims that "Plaintiffs merely allege they were exposed to unnamed substances" and that "forever chemicals" is an effectively meaningless non-scientific term.[6] [Def.'s Br. at 1, 5.] The Court notes, however, that the New Jersey Department of Environmental Protection ("NJDEP") website states plainly

---

[5]   Defendant also cites *Lafferty v. Sherwin-Williams Co.*, 2018 WL 3993448 (D.N.J. Aug. 21, 2018). Like the *Bond* court before it, this Court likewise finds *Lafferty* to be inapposite. *Bond*, 583 F. Supp. 3d at 651. *Lafferty* involved medical monitoring claims, not present here, that required allegations regarding the "specific substances to which Plaintiffs were *actually* exposed, at what levels Plaintiffs were actually exposed, [and] which diseases Plaintiffs are at an increased risk of developing" in order to show how "any medical monitoring programs would actually protect them." *Lafferty*, 2018 WL 3993448, at *5.

[6]   Chemours also seemingly derides the *pro se* Plaintiff's reference to the "fictionalized movie" Dark Waters. [Def.'s Br. at 1.] The cavalier manner in which Chemours minimizes Plaintiff's allegations and feigns ignorance as to even the gist of Plaintiff's allegations is disappointingly disingenuous. The Court observes that Chemours, represented by the same counsel here, has been the subject of numerous lawsuits relating to exposure to "forever chemicals" emanating from the Chambers Works facility in this District alone. *See, e.g.*, *New Jersey Department of Environmental Protection, et al. v. E. I. du Pont de Nemours and Co., Inc., et al.*, Civ. A. No. 19-14766; *Bond v. Solvay Specialty Polymers, USA, LLC, et al.*, Civ. A. No. 20-8487 and Civ. A. No. 21-11203; *Slusser v. Solvay Specialty Polymers, USA, LLC, et al.*, Civ. A. No. 20-11393; *O'Leary v. Solvay Specialty Polymers, USA, LLC, et al.*, Civ. A. No. 21-217; *Corrar v. Solvay Specialty Polymers, USA, LLC, et al.*, Civ. A. No. 21-452.

that PFAS are "also known as 'forever chemicals.'"  *See* NJDEP, What are PFAS? PFAS 101, https://dep.nj.gov/pfas/about/.[7]

That being said, the Court agrees that Plaintiff must do more than reference "chemical pollutants" and "forever chemicals" alone.  These terms, without more, are impermissibly vague and lack sufficient specificity to put Defendant on notice of the claims against it.  Notably, Plaintiff does not state what chemical was found in the Hills' water supply at 800% of the permitted levels.  Plaintiff must do more.  The proposed amended complaint, appended to Plaintiff's Opposition, seeks to do so by listing a number of chemicals by name.  [Pl.'s Opp'n at 4.]  However, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 120 (D.N.J. 2017) (quoting *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).  As such, these new allegations cannot be properly considered in resolving the motion to dismiss.[8]  For this reason, the Complaint must be dismissed without prejudice.

### 2. Causal Relationship between Forever Chemicals and Injuries

Next, the Court turns to Defendant's claim that the Complaint does not allege a causal link between "forever chemicals" and the Hills' medical conditions.  Plaintiff

---

[7] The Court may take judicial notice of the information found on the NJDEP's official government website.  *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 259 (E.D. Pa. 2020) ("information found on government websites is widely considered both self-authenticating and subject to judicial notice.").

[8] They do, however, support Plaintiff's position that leave to amend would not be futile.

alleges that the Hills were exposed to toxic waste from the Chambers Works plant for over forty years and that they suffered from a number of medical ailments. Plaintiff claims that "[i]n this *hot zone* incidents of nearly every medical ailment are at far greater levels than the rest of the population." [Compl. at 3.] But there is no information as to how the "hot zone" is defined, what medical ailments are more commonly found within it, and how this was determined. And Plaintiff alleges little else to connect the Hills' prolonged exposure to certain chemicals to their health conditions. As Defendant notes, the Complaint identifies just two "medical precursors to watch for as an indication of potential damage from water polluted with [DuPont's] forever chemicals:" hypertension and extremely high cholesterol. [*Id.*] Yet Andrew Hill is not alleged to have suffered from either of these conditions. And there are no allegations linking exposure to forever chemicals to the numerous other medical conditions from which the Hills suffered.

  Plaintiff counters that he is "entitled to discovery which will prove which chemicals cause the ailments and decreased the quality of life suffered by" the Hills. [Pl.'s Opp'n at 1.] But, as Defendant argues, "[n]o amount of discovery can cure a complaint that fails to state a claim." [Def.'s Reply at 1 (quoting *Borenstein McConnell & Calpin, P.C. v. Bank of Am. Corp.*, No. CIV. 2:13-03039 WHW, 2014 WL 69951, at *9 (D.N.J. Jan. 8, 2014).] So, while "[d]iscovery may reveal more about exactly how the toxins did or did not contribute to [the Hills'] conditions," Plaintiff must at least allege "the medical results that are associated with exposure to those toxins." *See Bond*, 583 F. Supp. 3d at 652. In Plaintiff's proposed amended complaint, Plaintiff claims

11

that Andrew Hill's physician "has stated that many medical conditions in his patients were caused by forever chemicals." [Pl.'s Opp'n at 3.] Still, no causal link between the conditions from which the Hills suffered and exposure to forever chemicals is spelled out. In any case, the Complaint cannot be amended through an opposition brief. *Janowski*, 259 F. Supp. 3d at 120. Plaintiff must adequately plead the medical conditions associated with exposure to the toxins at issue and that the Hills suffered from certain of those conditions. As Plaintiff has not done so, the Complaint must be dismissed.

### 3. Actual Exposure to Toxins

Chemours contends that the Complaint sets forth only vague, conclusory, and speculative allegations as to the Hills' actual exposure to toxins, which are insufficient to establish causation. Defendant is correct that Plaintiff must allege actual exposure to toxins. *See, e.g.*, *In re TMI*, 67 F.3d 1103, 1118 (3d Cir. 1995) ("As part of the causation inquiry, each plaintiff must demonstrate exposure to radiation released during the TMI accident."); *Bond*, 583 F. Supp. 3d at 651. A "high degree of specificity is not required." *Bellafaire*, 401 F. Supp. 3d at 415.

Plaintiff alleges that DuPont pumped chemical pollutants into the river near the Chambers Works plant in Deepwater, New Jersey. The contaminated river water was then directed into a "moat that acted as retainment pond / entry point into the subterranean water," which in turn polluted the water supply from the moat's entry point to Pendricktown, New Jersey. [Compl. at 3.] The Hills' home in Carney's Point is alleged to be less than three miles from the moat's entry point. [*Id.*] And it is roughly

four miles from the Chambers Works facility, per the Court's independent review of the distance between the plant, located at 67 Canal Road, Deepwater, New Jersey 08023, and the address provided for the Hills' Estates, 20 North Golfwood Avenue, Carney's Point, New Jersey 08069.[9] Plaintiff further alleges that when DuPont tested the Hills' water supply, it was highly polluted and had 800% the permissible levels of certain forever chemicals.[10] [*Id.* at 5.] The Hills drank this water for over forty years. [*Id.* at 3.]

The Court must accept Plaintiff's well pled allegations as true and view them in the light most favorable to Plaintiff at this stage. *Evancho*, 423 F.3d at 351; *see also*

---

[9] Courts may take judicial notice of the distance between two geographical locations. *Bond*, 583 F. Supp. 3d at 647.

[10] Plaintiff does not state when this testing was done, the chemicals tested for, or exactly what the results showed. The Court observes, however, that the *Bond* court identified and took judicial notice of a March 25, 2019 NJDEP report "that contained findings that Defendants" – which included both DuPont and Chemours – "contaminated New Jersey natural resources." *Bond*, 583 F. Supp. 3d at 647 (citing NJDEP Statewide PFAS Directive, *available at* https://www.nj.gov/dep/docs/statewide-pfas-directive-20190325.pdf). Notably, the NJDEP found evidence of significant contamination within just a few miles of the Hills' home, "sometimes at properties father from [Chambers Works] than Plaintiffs' residence[ was] from the plant[]." *See Bond*, 583 F. Supp. 3d at 647.

The Court may likewise take judicial notice of this document as it is a public report prepared by a governmental authority and has indicia of authenticity. *See Bond*, 583 F. Supp. 3d at 647 n.4 (collecting cases). To be clear, in doing so, the Court "is not taking the factual findings in the report as proven to be true, but rather merely acknowledging the existence of such findings by the NJDEP." *Id.* (citations omitted); *accord Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 259 (E.D. Pa. 2020) ("The Court declines to foreclose all proof on such a central question by looking outside the record at the motion-to-dismiss stage, so these materials will be judicially noticed only for their existence and not for their truth.").

*Bond*, 583 F. Supp. 3d at 654. And, given that the Plaintiff is proceeding *pro se*, the Court must also liberally construe his allegations. *Erickson*, 551 U.S. at 94. With these principles in mind, the Court finds that, regardless of how inartfully pled, "[t]here is no other logical way to read" Plaintiff's allegations "except to be said to allege that those were the ways that [the Hills] were exposed to the toxins." *Bond*, 583 F. Supp. 3d at 651. The Court recognizes that additional "detail in a complaint, such as the methods, amounts, and times of exposure would be beneficial." *Id.* at 653. *Pro se* pleadings, however, must be "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. What's more, the relevant "standard is not perfect pleading, just pleading that gives a reasonable expectation that discovery will reveal evidence of the necessary elements." *Bond*, 583 F. Supp. 3d at 653–54 (internal citation and quotations omitted).

### 4. Allegations against Chemours

Plaintiff's Complaint largely alleges actions against DuPont, Chemours's corporate affiliate and former parent company. Indeed, the only allegation that names Chemours specifically is a speculative and conclusory statement that "DuPont and later Chemours covered and hid facts and fought against any information becoming public." [Compl. at 5.] There are no well pled factual allegations that Chemours knowingly deceived the public. Additionally, Chemours is not alleged to have unlawfully dumped chemicals that ultimately contaminated the water supply. Those allegations refer only to its predecessor entity, DuPont. As Defendant points out, Chemours only came into existence in 2014 and took over ownership of the Chambers

Works plant in 2015. Plaintiff has alleged no theory of liability by which Chemours could be held responsible for the prior acts of DuPont.

Plaintiff opposes dismissal arguing that "DuPont spun off Chemours as an independent chemical company and the liabilities were passed on to Chemours" and that "DuPont and Chemours have been fighting each other as to where the responsibilities should fall." [Pl.'s Opp'n at 1.] None of this, however, is in the Complaint. As the Court has already explained, an opposition brief cannot be used to amend a complaint. *Janowski*, 259 F. Supp. 3d at 120.

To use Defendant's language, Plaintiff does not allege a causal link between Chemours's activities and the Hills' alleged injuries. Without any well pled allegations against Chemours itself or a theory of liability to hold Chemours responsible for DuPont's alleged actions, the Complaint fails.

### B. Plaintiff is Granted Leave to Amend

Plaintiff has requested leave to amend the Complaint to remedy any deficiencies identified by the Court. Federal Civil Procedure Rule 15 provides that leave to file an amended pleading "shall be freely given as justice so requires." FED. R. CIV. P. 15(a). "The Third Circuit has shown a strong liberality in allowing amendments under Rule a15 in order to ensure that claims will be decided on the merits rather than on technicalities." *Certain Underwriters at Lloyd's of London v. Alesi*, 843 F. Supp. 2d 517, 534 (D.N.J. 2011) (citing *Dole v. Arco Chemical Co.*, 921 F.2d 484, 487 (3d Cir. 1990); *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989)).

This is especially true when addressing *pro se* filings. When a plaintiff files a complaint *pro se* and is faced with a motion to dismiss, "unless amendment would be futile, the District Court *must* give a plaintiff the opportunity to amend her complaint." *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (Alito, J.)) (emphasis added); *accord Graham v. Dep't of the Treasury Internal Revenue Serv.*, No. 22-1285, 2023 WL 3597382, at *2 (3d Cir. May 23, 2023) ("[W]e disfavor dismissing a complaint without giving a pro se litigant an opportunity to amend.") (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002)).

Chemours argues that amendment would be futile and urges the Court to dismiss the Complaint with prejudice. [Def.'s Reply at 1 n.1.] The Court disagrees. Plaintiff has set forth in his Opposition additional allegations and theories of liability that address certain of the identified deficiencies. Plaintiff also seeks to add DuPont as a defendant. The Court has explained herein the deficiencies that the *pro se* Plaintiff must remedy to move past the pleadings stage. Plaintiff has not previously been granted an opportunity to amend and now may do so with the benefit of the Court's rulings. Based upon the submissions before it, the Court sees no reason to overcome the Third Circuit's reminder that "ordinarily" the *pro se* plaintiff "must be given leave to amend" prior to a dismissal with prejudice. *Jackson v. Div. of Developmental Disabilities*, 394 F. App'x 950, 952 (3d Cir. 2010) (citing *Phillips*, 515 F.3d at 235). Defendant's protests to the contrary are unconvincing.

Accordingly, the Court will dismiss the Complaint without prejudice and grant Plaintiff leave to amend his pleadings within thirty (30) days. Should Plaintiff choose to amend his complaint, he must set forth the types of chemical pollutants alleged to have contaminated the Hills' water supply and the injuries associated with exposure to said chemicals, as well as allegations that, if proven true, establish liability against all named defendants.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss by Defendant Chemours is **GRANTED**, and the Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may amend his pleadings within thirty (30) days of the entry of this Opinion and the accompanying Order to cure the deficiencies identified herein. An appropriate Order shall issue on this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge

DATED: **February 13, 2025**